UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RASHONDA WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18-3308 |
| | ) | |
| BEATRICE CALHOUN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT OPINION

SUE E. MYERCOUGH, U.S. District Judge:

Plaintiff, proceeding through counsel, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment conditions-of-confinement claim arising from events that allegedly transpired during her incarceration at Logan Correctional Center. The matter comes before this Court for ruling on the Motion for Summary Judgment filed by Defendants Calhoun, Norton, Prater, Short, and Wolfe. (Doc. 46). The motion is denied.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Logan Correctional Center ("Logan"). UMF 1. Defendants were employed at the facility in the following capacities: Defendant Calhoun was the Assistant Warden for Operations; Defendant Short was the Chief Engineer; and Defendant Prater was a Correctional Officer.[1] UMF 2, 4-5.

---

[1] Defendants Norton and Wolfe were dismissed with prejudice pursuant to the stipulation filed October 9, 2020. (Doc. 50); Text Order entered Oct. 14, 2020. Defendants' motion, as it relates to these defendants, is denied as moot.

Arriving inmates at Logan are housed in an area known as X House until the intake process is complete. UMF 7. They are permitted to leave their cells only for showers, medical appointments, and, once medically cleared, for meals. UMF 13; Pl.'s Dep. 62:7-10. The cells in that area of the prison have windows operated by a crank mechanism that permits an inmate to open an close the window. AMF 51. From December 7, 2016 through December 13, 2016, prison officials housed Plaintiff and another inmate in a cell with a window that would not shut completely, thus allowing outside air into the cell. UMF 15. The heating vent in the cell provided no heat. Pl.'s Dep. 15:21-16:2.

Outside temperatures during those six days ranged from 19-25 degrees. AMF 50. Plaintiff told Defendant Prater about the temperatures in her cell and requested an additional blanket. Pl.'s Dep. 18:1-4. Defendant Prater provided only sanitary napkins to place into the open part of the window to stop the cold air from entering the cell. Id. 65:5-7; AMF 59. The strategy did not work, and the temperatures forced Plaintiff and her cellmate to spend most of the days curled up in balls on their bunks for warmth. AMF 57, 59. On at least one occasion, the two inmates slept in the same bunk in

an attempt to stay warm. Id. Plaintiff testified that correctional officers wore heavy outdoor coats in the cellhouse during checks. AMF 60.

Plaintiff was permitted one hot shower during the six days she was in that cell. UMF 19. Plaintiff testified that her feet went numb from the cold and turned purple. AMF 62. She later experienced tingling in her feet followed by extreme pain that prevented her from walking to the showers or to meals. AMF 63-65.

Defendants Prater, Calhoun, and Short knew that the window crank mechanisms in X House were often in disrepair, that the windows were screwed shut in the winter for this reason, and that the screws could break. AMF 69, 76. They knew that, if a window in a cell would not close in the winter, the cell would become very cold. AMF 70. Defendant Calhoun testified that inmates housed in a cold cell should be moved to a different cell. AMF 75. Defendant Prater had previously moved inmates out of X House for those reasons. AMF 71.

A security review, in which Defendant Short had participated on January 21, 2016, recommended that officials maintain a document showing building temperatures to assist maintenance

staff in identifying issues and grievance officers in responding to grievances. AMF 78. The record does not disclose that such a document was created, nor does it disclose that a work order had been submitted for the window in Plaintiff's cell prior to her arrival.

## ANALYSIS

Prison officials violate the Eighth Amendment when they act with deliberate indifference towards conditions that pose an excessive risk to an inmate's health or safety. <u>Giles v. Godinez</u>, 914 F.3d 1040, 1051 (7th Cir. 2019). The conditions at issue must be "sufficiently serious" such that they result in "the denial of the minimal civilized measure of life's necessities." <u>Isby v. Brown</u>, 856 F.3d 508, 521 (7th Cir. 2017); <u>Henderson v. Sheahan,</u> 196 F.3d 849, 845 (7th Cir. 1999) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim.").

Exposure to cold temperatures without adequate means to keep warm constitutes a sufficiently serious deprivation for purposes of the Eighth Amendment, regardless of whether the prisoner's health is endangered. <u>Del Raine v. Williford</u>, 32 F.3d 1024, 1035 (7th Cir. 1994) (frostbite, hypothermia, and other injury is not required to show a violation of the Eighth Amendment arising

from exposure to cold temperatures); <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991). Defendants' argument that Plaintiff's alleged injuries were caused by medical conditions unrelated to cold exposure, even if true, does not preclude a finding that the conditions Plaintiff endured constituted an objectively serious deprivation.

The parties do not dispute that the window in Plaintiff's cell would not close during a time that outside temperatures ranged from 19-25 degrees. Defendant Calhoun testified that cells in X House would become very cold in those circumstances and inmates previously in X House had been moved for those reasons. Plaintiff also presented evidence that the heating vent in the cell did not distribute hot air, that she was not provided additional clothing or bedding, and that the temperatures forced her and her cellmate to huddle in their bunks for warmth.

At a minimum, a material factual dispute exists regarding whether the clothing and bedding prison officials issued to Plaintiff provided adequate warmth given the temperatures she was forced to endure for six days. The reasons Defendants offer to explain why correctional officers may have been wearing outdoor coats inside the building or why Plaintiff's claims regarding the heating vents are

not true only highlight these disputes. Viewed in the light most favorable to Plaintiff, the record supports a reasonable inference that the severity and duration of the cold she experienced in combination with the lack of adequate protection amounted to a sufficiently serious deprivation for purposes of the Eighth Amendment. See Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir. 1997) (issue of whether the severity and duration of cold exposure is "sufficient to violate the Eighth Amendment is one which will often be peculiarly appropriate for resolution by the trier of facts.").

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842.

Plaintiff's testimony that she told Defendant Prater about the temperature in her cell and that he provided items for purposes of stopping the cold air from entering the cell is sufficient to permit a reasonable inference that Defendant Prater knew about the conditions Plaintiff faced.

Plaintiff's observation that correctional officers wore heavy outdoor coats while inside X House, if believed by the trier of fact, supports the conclusion that the conditions and associated risks were obvious. The question of whether Defendant Prater's actions, or lack thereof, constitute deliberate indifference hinges on questions of fact more properly resolved at trial.

Whether a jury could find that Defendants Calhoun or Short knew about the conditions is a closer question.  However, the Court cannot rule out a reasonable inference that Defendants Calhoun and Short both knew about Plaintiff's predicament or turned blind eyes.  Both knew of the window problem in general, and Defendant Calhoun toured the area where Plaintiff was housed.  Summary judgment is denied for Defendants Short and Calhoun as well.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment is DENIED. [46]**

2) **This case is referred to Magistrate Judge Schanzle-Haskins for a settlement conference.  Final pretrial and trial dates will be set if the case does not settle.**

3) **The clerk is directed to notify the Magistrate Judge of this referral.**

ENTERED:  May 4, 2021

FOR THE COURT:

*s/Sue E. Myerscough*
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE